UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TATIANA MIAGKIKH,<br>Petitioner,<br>v.<br>CHRISTOPHER CHESTNUT, et al.,<br>Respondents. | No. 1:26-cv-03295-DJC-SCR<br><br><u>ORDER</u><br>A# 221-350-863 |

This case asks whether the need to ensure a noncitizen's attendance at future immigration proceedings justifies detaining her for more than eighteen months when alternatives to detention could serve the same goal. The Court finds that it does not. The Due Process Clause requires her release.

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). When an individual is civilly detained for an extended period of time, that detention can become punitive and thus excessive of its regulatory purpose in violation of substantive due process. Neither the Supreme Court nor the Ninth Circuit have set forth a framework for analyzing the point at which prolonged immigration detention crosses that line. However, drawing on the factors the Ninth Circuit uses to identify the unconstitutionally prolonged detention of

detainees awaiting criminal trial and civil commitment proceedings, the Court finds Petitioner's detention violates her substantive due process rights.

**BACKGROUND**

Petitioner is a native and citizen of Russia who entered the United States on April 21, 2025, at the San Ysidro, California Port of Entry. (Mot. (ECF No. 9) ¶ 1.) She has been detained by Immigration and Customs Enforcement ("ICE") for the eighteen months since. (*Id.*)

Though Petitioner was initially placed in expedited removal proceedings, ICE found Petitioner had a credible fear of persecution in Russia shortly after detaining her. (ECF No. 5 at 2; Pet. (ECF No. 1) ¶ 2.) When an asylum officer finds an applicant's asserted fear credible, the applicant receives consideration of their asylum claim in regular removal proceedings. *Padilla v. United States Immigr. & Customs Enf't*, --- F.4th ---, 2026 WL 2822044, at *3 (9th Cir. Sept. 21, 2026) (citing *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 110 (2020)). However, because Petitioner was initially screened for expedited removal, her ongoing detention is mandated by 8 U.S.C. § 1225(b)(1)(B)(ii). *See id.* at *4. As interpreted by the Supreme Court, that section "provides no opportunity for a bond hearing or any comparable individualized procedure . . . requiring the government to justify the necessity of their detention." *Id.* at *2 (citing *Jennings v. Rodriguez*, 583 U.S. 281, 297–99 (2018)).

While detained, Petitioner filed an application for asylum, withholding of removal, and protection under the Convention Against Torture. (Pet. ¶ 3.) On April 10, 2026, an Immigration Judge denied these applications, a decision Petitioner appealed to the Board of Immigration Appeals ("BIA"). (*Id.* ¶ 45.) Throughout Petitioner's eighteen-month detention, she has endured a miscarriage and multiple hospitalizations. (*Id.* ¶ 11.)

In April 2026, Petitioner filed a Petition for Writ of Habeas Corpus, seeking release from custody. (Pet.) Applying the framework set forth in *Banda v. McAleenan*, 385 F. Supp. 3d 1099 (W.D. Wash. 2019), this Court found Petitioner's prolonged

detention without individualized review violated her protected liberty interest and entitled her to a bond hearing before an Immigration Judge. (Order (ECF No. 6) at 3, 6.) The Court ordered that, at this hearing, the Government would bear the burden of establishing, by clear and convincing evidence, that Petitioner posed a risk of flight or danger to the community. (*Id.* at 6.)

On June 3, 2026, the Immigration Judge concluded Petitioner posed "a significant flight risk such that no amount of bond or conditions would secure her future court appearances." (Bond Order (ECF No. 9-2) at 1.) The Immigration Judge reasoned that Petitioner's lack of "employment history, residential history, or history appearing in Immigration Court," render her a flight risk. (*Id.*) The Immigration Judge also considered Petitioner's lack of immediate family members in the United States from whom she could derive lawful status. (*Id.*)

Petitioner then filed a motion to enforce this Court's judgment, arguing her prolonged detention violates the Fifth Amendment Due Process Clause. (Mot. ¶¶ 53–55.) The Court then requested that the parties file supplemental briefing on "whether the finding that Petitioner is a flight risk qualifies as a sufficiently 'special justification' to outweigh Petitioner's 'constitutionally protected interest in avoiding physical restraint' irrespective of how long that detention lasts." (ECF No. 12 (quoting *Zadvydas*, 533 U.S. 690 (quotation omitted)).) This motion is fully briefed (Mot. (ECF No. 9); Opp'n (ECF No. 10); Resp'ts. Suppl. Br. (ECF No. 14); Pet. Suppl. Br. (ECF No. 15)) and was ordered submitted (ECF No. 12).

## DISCUSSION

Petitioner asserts her prolonged detention violates the Due Process Clause. (Pet. ¶¶ 54–55.) Though the Supreme Court found in *Jennings* that the text of § 1225 does not "impose[] any limit on the length of detention," 583 U.S. at 297, it expressly left open the constitutional question presented in this case. *Id.* at 313; *Rodriguez v. Marin*, 909 F.3d 252, 255 (9th Cir. 2018) (explaining that *Jennings* solely addressed whether § 1225 itself permits arbitrary prolonged detention and "declined to reach

the constitutional question"). While Petitioner has been afforded procedural due process in the form of a bond hearing, the question before the Court is whether she has a substantive due process right to release from custody despite an Immigration Judge finding she is a flight risk. The Court concludes she does.

## I. Petitioner's Fifth Amendment Rights

The Fifth Amendment Due Process Clause prohibits government deprivation of an individual's life, liberty, or property without due process of law. U.S. Const. amend. V. "[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent."[1] *Zadvydas*, 533 U.S. at 693. "The Framers viewed freedom from unlawful restraint as a fundamental precept of liberty." *Boumediene v. Bush*, 553 U.S. 723, 739 (2008). "From the Declaration of Independence through the original Constitution and

---

[1] While not argued in this case, in many other immigration habeas cases, the Government has argued the rights afforded by the Fifth Amendment Due Process Clause do not extend to noncitizens apprehended at the border. To be clear, such noncitizens still have due process rights to with respect to freedom from detention. Though the Supreme Court and the Ninth Circuit have found that noncitizens who, like Petitioner, are apprehended at the border lack due process in certain procedures regarding admission to the United States, these cases do not establish the absence of such rights with respect to detention. In *Thuraissigiam*, the Supreme Court held that a noncitizen apprehended 25 yards from the border lacked a procedural due process right to judicial review of the finding that he lacked a credible fear of persecution. 591 U.S. at 107, 140. While credible fear determinations have both detention and admission-related consequences, the Ninth Circuit has explained that *Thuraissigiam* "emphasized that it was specifically addressing Thuraissigiam's admission-related rights, concluding that 'an alien in respondent's position has only those *rights regarding admission* that Congress has provided by statute.'" *Padilla*, 2026 WL 2822044, at *16 (quoting *Thuraissigiam*, 591 U.S. at 140). However, that case "'made no mention of release from custody,' nor did [petitioner] assert a due process claim regarding judicial review of any aspect of his detention." *Id.* (quoting *Thuraissigiam*, 591 U.S. at 115). Ninth Circuit precedent limiting the due process rights of those apprehended at the border similarly involve rights in admission rather than detention-related proceedings. *See Mendoza-Linares v. Garland*, 51 F.4th 1146, 1148–49 (9th Cir. 2022) (holding court lacked jurisdiction to review constitutional challenge to negative credible fear determination by individual apprehended immediately after entry); *Guerrier v. Garland*, 18 F.4th 304, 307 n.1, 313 (9th Cir. 2021) (holding court lacked jurisdiction to review constitutional challenge to expedited removal proceedings against individual apprehended shortly after entry). However, the Ninth Circuit indicated that this limitation to due process rights applies in "an admission, not a detention case." *Padilla*, 2026 WL 2822044, at *19. This distinction is crucial as "[a]dmission and detention occupy fundamentally different positions in our legal order." *Id.* at *16. "Unlike the political branches' plenary power over admission, the principle that the government cannot arbitrarily detain people, including noncitizens, has been a central tenet of British and American legal traditions since the thirteenth century." *Id.*

the Fourteenth Amendment, protection against restrictions on 'liberty' has been central to our national identity." *Padilla*, 2026 WL 2822044, at *16. Accordingly, "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690; *see also Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action.").

"[G]overnment detention violates that Clause unless the detention is ordered in a criminal proceeding with adequate procedural protections or, in certain special and narrow nonpunitive circumstances, where a special justification, such as harm-threatening mental illness, outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Zadvydas*, 533 U.S. at 690 (cleaned up). In Petitioner's case, as in many others, this Court found that noncitizens apprehended at the border and detained for several months without any individualized assessment of whether such a special justification exists have a Fifth Amendment right to review of that question. (*See* Order; *see also, e.g.*, *Mohammed v. Warden of California City Det. Ctr.*, No. 1:26-cv-00118-DJC-CSK, 2026 WL 192368, at *4 (E.D. Cal. Jan. 26, 2026); *Ding v. Noem*, No. 1:26-cv-01217-DJC-SCR, 2026 WL 776029, at *3 (E.D. Cal. Mar. 19, 2026); *Choudhary v. Chestnut*, No. 1:26-cv-01770-DJC-CKD, 2026 WL 816711, at *3 (E.D. Cal. Mar. 24, 2026).) The Court therefore ordered the Government to provide Petitioner with a constitutionally adequate bond hearing at which an Immigration Judge would assess if the Government could justify Petitioner's prolonged detention. (Order at 6.)

Though Petitioner has now been provided with this process, "the Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government actions 'regardless of the fairness of the procedures used to implement them.'" *Foucha*, 504 U.S. at 80 (quoting *Zinermon v. Burch*, 494 U.S. 113, 125 (1990)). As an Immigration Judge has now provided process and offered a justification for

Petitioner's eighteen-month detention—that Petitioner presents a flight risk—this Court must decide if that justification is constitutionally adequate to sustain her continued detention.

**A. Substantive Due Process**

Substantive Due Process "requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." *Jackson v. Indiana*, 406 U.S. 715, 738 (1972). Immigration proceedings are "civil, not criminal" and therefore are "nonpunitive in purpose and effect." *Zadvydas*, 533 U.S. at 690. Thus, the state interest served must be regulatory in nature. At first glance, the proffered justification for Petitioner's ongoing detention satisfies this requirement as "ensuring the appearance of [noncitizens] at future immigration proceedings" is a regulatory, not punitive, purpose and detention reasonably relates to that purpose. *See id.* However, when an individual is detained for an extended period of time, that detention becomes punitive in violation of the Due Process Clause, regardless of its initial regulatory purpose. *United States v. Torres*, 995 F.3d 695, 708–710 (9th Cir. 2021). In other words, at some point, protracted detention no longer bears a rational relationship to the regulatory state interest.

The Supreme Court has never identified the point at which prolonged detention "transforms from regulatory to punitive in violation of the Due Process Clause[]." Kendall Huennekens, *Long Over-Due Process: Proposing a New Standard for Pretrial Detainees' Length of Confinement Claims*, 71 Duke L. Rev. 1647, 1653 (2022); *see also United States v. Salerno*, 481 U.S. 739, 747 n. 4 (1987) ("We intimate no view as to the point at which detention in a particular case might become excessively prolonged, and therefore punitive, in relation to Congress' regulatory goal."). But the Ninth Circuit's assessment of prolonged detention claims in other contexts offers a useful framework. The Ninth Circuit has made clear that "at some point, pretrial detention can become excessively prolonged, and therefore punitive, resulting in a due process violation," even when that detention necessarily has an end

date. *Torres*, 995 F.3d at 708 (quotation omitted). In this context, a substantive "due process violation occurs when detention becomes punitive rather than regulatory, meaning there is no regulatory purpose that can rationally be assigned to the detention or the detention appears excessive in relation to its regulatory purpose." *Id.* Put differently, when the effect of detention becomes punitive, these punitive means used can no longer be justified by the Government's regulatory ends. To assess the point at which pretrial detention slips from regulatory to punitive, the Ninth Circuit considers "(1) the length of the defendant's pretrial detention; (2) the prosecution's contribution to the delay; and (3) the evidence supporting detention." *United States v. Walker*, 68 F.4th 1227 (9th Cir. 2023) (quoting *Torres*, 995 F.3d at 708).

The Ninth Circuit has found similar constitutional limitations to the length of detention prior to involuntary civil commitment proceedings. There, the Ninth Circuit has explained that "even if not intended to punish, detention is punitive and violates substantive due process 'where it is excessive in relation to its non-punitive purpose, or is employed to achieve objectives that could be accomplished in so many alternative and less harsh methods.'" *Doe v. Becerra*, 723 F. Supp. 3d 688, 691 (N.D. Cal. 2024) (quoting *Jones v. Blanas*, 393 F.3d 918, 934 (9th Cir. 2004)). To assess whether such a violation has occurred, the Ninth Circuit considers the conditions of the detainee's confinement and whether the relevant regulatory aim "could have been carried out via alternative and less harsh methods." *Jones*, 393 F.3d at 934 (quotation omitted).

Drawing on the factors the Ninth Circuit considers in each of the foregoing contexts, some courts in this Circuit use the following factors to assess when immigration detention has become so prolonged that it violates substantive due process:

> "(1) the length of detention and whether it is excessive in relation to its regulatory purpose; (2) the government's contribution to any delay; (3) the evidence supporting the determination that detention is warranted to prevent flight

> risk or community danger; (4) whether the government interests in ensuring appearance at future proceedings and protecting the community could be protected through alternatives to detention that are less harsh; (5) the conditions of detention and how they compare to [conditions] under which pretrial criminal detainees or people convicted of crimes are held."

*Doe v. Becerra*, 723 F. Supp. 3d 688, 692 (N.D. Cal. 2024) (citations omitted). Considering the Ninth Circuit's guidance in other detention contexts, the Court finds this approach appropriate and now assesses each factor.

**1. Length of Detention**

While the Ninth Circuit has made clear that, "at some point [civil] detention can become excessively prolonged, and therefore punitive, resulting in a due process violation," *Torres*, 995 F.3d at 708 (quotation omitted), this point has "never been clearly delineated in the context of immigration detention." *Doe v. Becerra*, 704 F. Supp. 3d 1006, 1020 (N.D. Cal. 2023), *abrogated on other grounds by Doe v. Garland*, 109 F.4th 1188 (9th Cir. 2024). In *Zadvydas*, the Supreme Court found Government detention of individuals with final removal orders presumptively reasonable for six months. 533 U.S. at 701. And though the Supreme Court in *Demore v. Kim* rejected the proposition that 8 U.S.C. § 1226(c) detention beyond the six-month mark is facially unconstitutional, that case also noted that such detention normally spans a "limited period," typically lasting "roughly a month and a half in the vast majority of cases in which it is invoked, and about five months in the minority of cases in which the [noncitizen] chooses to appeal." 538 U.S. at 530–31.

Petitioner's eighteen-month detention clearly qualifies as prolonged. (*See* Mot. ¶ 1.) This detention is likely to endure indefinitely while determinations about Petitioner's claims for asylum, withholding of removal, and protection under the Convention Against Torture and her removability are appealed. *See Gao v. LaRose*, 805 F. Supp. 3d 1106, 1111 (S.D. Cal. 2025) (explaining that individuals who have appealed removal orders to the BIA "face[] an undetermined, but likely significant,

period of mandatory detention through the appeals process"); *Martinez v. Clark*, No. 2:18-cv-01669-RAJ, 2019 WL 5968089, at *9 (W.D. Wash. May 23, 2019), *report and recommendation adopted*, No. 2:18-cv-01669-RAJ, 2019 WL 5962685 (W.D. Wash. Nov. 13, 2019)) (finding likely length of future detention absent judicial intervention weighed in favor of finding a due process violation when petitioner had appealed his removal order to the BIA). As Petitioner has been detained eighteen months and faces indefinite future detention, the Court finds this factor weighs in favor of finding a due process violation. *See Chen v. Aitken*, 917 F. Supp. 2d 1013, 1018 (N.D. Cal. 2013) (holding Petitioner's seven-month detention under § 1225(b) was "prolonged" because it "has lasted well beyond the typical period described in *Demore*" and "neither release nor removal are imminent" (quotation omitted)).

However, the length of detention alone is not dispositive. The Court must still ascertain whether the length of Petitioner's detention is disproportionate to the regulatory purpose it ostensibly serves—in this case, mitigating flight risk. The factors addressed below, including the extent to which Petitioner presents this risk and alternative means of minimizing it, will ultimately determine whether eighteen months of detention is unconstitutionally excessive.

**2. Government Contribution to Delay**

Petitioner asserts, and Respondents do not contest, that her "master calendar hearings were continued multiple times through no fault of her own." (Pet. ¶ 6; *see generally* ECF No. 5.) Further, though Petitioner's initial merits hearing was set for February 5, 2026, the Government continued the hearing to March 19, 2026, after reassigning it to a different Immigration Judge. (Pet. ¶ 7.) In the absence of any contradictory argument or evidence from the Government, the Court finds the Government has contributed to the delay in Petitioner's proceedings, and this factor weighs in favor of finding a due process violation.

////

////

**3. Evidence of Flight Risk & Alternatives to Detention**

"Whether the duration of detention is excessive" depends in part on the degree to which Petitioner presents a risk of flight or danger "and the extent to which [Petitioner's] detention mitigates" those risks. *Doe v. Becerra*, 732 F. Supp. 3d 1071, 1083 (N.D. Cal. 2024). As neither the Immigration Judge nor this Court have found any indication that Petitioner poses a danger to the community, this factor turns solely on whether Petitioner is a flight risk. (*See generally*, Bond Order.)

The evidence before the Court indicates Petitioner presents only a moderate flight risk. This factor assesses the "degree to which [Petitioner] poses a risk of flight . . . which in turn requires the Court to consider the evidence related to those risks." *Doe v. Becerra*, 732 F. Supp. 3d 1071, 1086 (N.D. Cal. 2024). During the June 2026 bond hearing, the Immigration Judge found Petitioner presents a flight risk based on her lack of ties to the United States and family members from whom she could derive permanent status. (Bond Order at 1.) Though immigration judges may consider these factors when evaluating flight risk, *see Matter of Guerra*, 24 I.&N. Dec. 37, 40 (BIA 2006), none are particular to her or within her control. Further, the fact that Petitioner lacks employment, residential, and out-of-custody court appearance history in the United States is common to all individuals detained upon entry. *See Singh v. Holder*, 638 F.3d 1196, 1205 (9th Cir. 2011) *abrogated on other grounds by Jennings*, 583 U.S. 281 (suggesting that Immigration Judge erred in relying only on facts "common to *all* detainees" which, alone, could not supporting a finding by clear and convincing evidence that the detainee posed a flight risk). As the Immigration Judge and this Court have no evidence particular to Petitioner's character or conduct that would render her a flight risk, the Court finds Petitioner's release could result in only a moderate risk that she would abscond.

Alternatives to detention can significantly mitigate this risk. The Court must assess "whether the government's interests in protecting the community and ensuring appearances for immigration proceedings could be protected through alternatives to

detention that are less restrictive." *Tigranyan v. Warden*, No. 1:26-cv-03756-DJC-SCR, 2026 WL 2665968, at *5 (E.D. Cal. Sept. 10, 2026), *report and recommendation adopted sub nom. Tigranyan v. Chestnut*, No. 1:26-cv-03756-DJC-SCR, 2026 WL 2884290 (E.D. Cal. Sept. 25, 2026). In 2017, the Ninth Circuit explained that ICE's "Intensive Supervision Appearance Program—which relies on various alternative release conditions—resulted in a 99% attendance rate at all EOIR hearings and a 95% attendance rate at final hearings." *Hernandez v. Sessions*, 872 F.3d 976, 991 (9th Cir. 2017). "ICE data for 2023 shows that participants in these programs appeared at 99.1% of hearings, including 93.6% of final hearings." *Doe v. Becerra*, 732 F. Supp. 3d 1071, 1088 (N.D. Cal. 2024). "These alternatives to detention are specifically designed to mitigate flight, and ICE's own data shows that the vast majority of participants comply with the programs' requirements." *Tigranyan*, 2026 WL 2884290, at *5. This data indicates that any flight risk Petitioner presents can be significantly reduced by alternatives to detention.

**4. Conditions of Detention**

Substantive due process requires that the conditions of civil detention are proportional to the regulatory purpose that detention serves. *Hydrick v. Hunter*, 500 F.3d 978, 997 (9th Cir. 2007), *cert. granted, judgment vacated*, 556 U.S. 1256 (2009) (explaining that "due process requires that the conditions and duration of confinement for civilly confined persons bear some reasonable relation to the purpose for which persons are committed" (quotation omitted)). The Due Process Clause thus "requires that civilly committed persons not be subjected to conditions that amount to punishment." *Id.* When a civil "detainee is confined in conditions identical to, similar to, or more restrictive than, those in which [their] criminal counterparts are held, we presume that the detainee is being subjected to 'punishment.'" *Jones*, 393 F.3d at 932.

The conditions of Petitioner's confinement clearly meet this threshold and are thus presumptively punitive. Petitioner is currently detained at the California City

Correctional Facility.[2] (Pet. ¶ 28.) Though Petitioner does not make specific allegations about the conditions at that facility, "[d]uring her prolonged detention, Petitioner has suffered significant physical and mental health deterioration" and alleges that her "continued confinement has caused and continues to cause serious harm." (Mot. ¶ 10.) During this time, Petitioner has "suffered a miscarriage" and "endured multiple hospitalizations." (*Id.* ¶ 11.) She also suffers from "severe, bleeding hives and significant physical, emotional, and psychological distress, and has been diagnosed with herpes." (*Id.*)

Other individuals recently detained at the California City Detention Center have confirmed the "lack of medical care at California City." *Navarette-Leiva v. Chestnut*, No. 1:26-cv-03966-DJC-SCR, 2026 WL 2169096, at *3 (E.D. Cal. July 28, 2026). Another district court has found that the "inadequacy of health care provided" at this facility likely "violates the Fifth Amendment" based on evidence that it "struggle[s] to deliver [sic] standard of care for common uncomplicated problems, let alone for patients with complex medical care needs." *Gomez Ruiz v. U.S. Immigr. & Customs Enf't*, 834 F. Supp. 3d 835, 848, 844 (N.D. Cal. 2026) (quotation omitted). That court explained that the California City Detention Center's healthcare system "suffers from systemic delays and failures," with "the result that patients are not seen within a reasonable time and sick calls describing urgent medical symptoms can go unaddressed or unacknowledged for days or weeks." *Id.* at 844 (quotation omitted). Many detainees at this facility suffered "adverse outcomes," including "organ damage" and "kidney damage," due to "poor medical care." *Id.* at 845. Based on this evidence, the expert in that case concluded that "it is not safe to be sick" at the California City Detention Center. *Id.*

---

[2] The Petition states that Petitioner is detained at the California City Detention Center in some paragraphs (Pet. ¶ 28) but in the Otay Mesa Detention Center in others (Pet. ¶¶ 4, 9). Given Petitioner named the "Warden of California City Corrections Center," filed suit in this district, and Respondent does not dispute that this Defendant and venue are proper, the Court presumes Petitioner is detained at the California City Detention Center.

Moreover, courts have noted that, in general, "the circumstances of [noncitizens'] detention are similar, so far as we can tell, to those in many prisons and jails." *Jennings*, 583 U.S. at 329 (Breyer, J., dissenting); *see also Hernandez*, 872 F.3d at 995 (noting the "evidence of subpar medical and psychiatric care in ICE detention facilities").

This disturbingly deficient healthcare system inflicts harm that far exceeds what is required to achieve the nonpunitive aim of preventing flight. Substantive due process does not permit detention in such punitive conditions to effectuate a regulatory end.

* * *

Petitioner's detention is excessive in relation to its regulatory purpose. The Due Process Clause does not allow the Government to detain a noncitizen in prison-like conditions for a year and a half based solely on a generalized concern that individuals with some similarities to Petitioner may present a risk of flight, especially where the Government could easily mitigate this risk through alternatives to detention.

The Government counters that *Demore v. Kim*, 538 U.S. 510 (2003) and *Rodriguez Diaz v. Garland*, 53 F.4th 1189 (9th Cir. 2022) sanction all immigration detention that serves the goal of preventing flight. (Resp'ts. Suppl. Br. at 4.) According to the Government, *Demore* deemed detention during removal proceedings constitutional "so long as it continues to 'serve its purported immigration purpose.'" (*Id.* (quoting *Demore*, 538 U.S. at 527).) *Demore* said no such thing. The quoted phrase explains that *Zadvydas* found unconstitutional the detention of individuals who could not be deported in the reasonably foreseeable future in order to ensure their appearance for deportation. *Demore*, 528 U.S. at 527 (citing *Zadvydas*, 533 U.S. at 690). But the finding that detention that does not reasonably serve a regulatory end is unconstitutional does not render the inverse true. All detention that serves a regulatory end is not per se constitutional. The length and conditions of that confinement must still be tailored to a regulatory end. Similarly,

though *Demore* did find detention under § 1226(c) justified in part by mitigating flight risk and thus facially constitutional, it did not hold that any detention that prevents flight is automatically and universally constitutional. That case did nothing to displace the wealth of precedent holding that regulatory detention cannot be excessive in relation to its purpose. Accordingly, *Demore* does not even foreclose as-applied challenges to the detention authority it deemed facially constitutional. *Keo v. Chestnut*, No. 1:26-cv-01192-DJC-CSK, 2026 WL 747117, at *2 (E.D. Cal. Mar. 17, 2026).

The reason for which *Demore* and *Rodriguez Diaz* found detention to prevent flight constitutional also distinguishes this case. In *Demore*, the Supreme Court found the detention of "deportable criminal [noncitizens]" justified by the legislative purpose of mitigating flight risk. *Demore*, 538 U.S. at 520, 528. In so doing, the Supreme Court highlighted the numerous studies Congress relied on supporting the proposition that "even with individualized screening, releasing deportable *criminal* [noncitizens] on bond would lead to an unacceptable rate of flight." *Id.* at 520 (emphasis added). And in rejecting a challenge to the prolonged detention of an individual with a "fairly lengthy criminal record," the Ninth Circuit explicitly noted *Demore*'s finding that "the government has been unable to remove *criminal* [noncitizens] because of its initial failure to detain them." *Rodriguez Diaz*, 53 F.4th at 1194, 1209 (citing *Demore*, 538 U.S. at 519) (emphasis added). Here, Petitioner does not have any identified criminal history. These cases thus offer little about whether the flight risk posed by this Petitioner justifies her prolonged detention.

Finally, the Government asserts that preventing flight is a regulatory interest "that only increase[s] with the passage of time." (Resp'ts. Suppl. Br. at 4 (quoting *Rodriguez Diaz*, 53 F.4th at 1208).) But so too does the detainee's liberty interest. *See Zadvydas*, 533 U.S. at 701. The Government's interest in securing a noncitizen's appearance at immigration court proceedings cannot indefinitely outweigh that individual's entitlement to the most basic liberty secured by the Constitution.

**II. Remedy**

The default remedy for unlawful executive detention is release. *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (citing *Hamdi v. Rumsfeld*, 542 U.S. 507, 536 (2004)). Given the finding that the Government cannot justify Petitioner's ongoing detention and that such detention has violated her substantive due process rights, the appropriate remedy is release.

However, the Government may impose conditions on Petitioner's release that mitigate her risk of flight. "Federal habeas corpus practice, as reflected by the decisions of [the Supreme] Court, indicates that a court has broad discretion in conditioning a judgment granting habeas relief." *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987). Habeas corpus relief is "at its core, an equitable remedy." *Schlup v. Delo*, 513 U.S. 298, 319 (1995). And "[o]nce a constitutional right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Roman v. Wolf*, 977 F.3d 935, 942 (9th Cir. 2020) (quotation omitted). Accordingly, the Court may condition Petitioner's release on terms that will safeguard the Government's interest in securing her attendance at future immigration court proceedings. *See Tigranyan*, 2026 WL 2665968, at *6 (ordering Petitioner's release but requiring the Government to "enroll Petitioner in ICE's Intensive Supervision Appearance Program (ISAP) and impose its standard flight-mitigation conditions"); *see also Zadvydas*, 533 U.S. at 700 ("[T]he [noncitizen]'s release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the [noncitizen] may no doubt be returned to custody upon a violation of those conditions."). The Court finds it appropriate to permit Respondents to determine the nature of those conditions in the first instance.

**CONCLUSION**

For the reasons stated above, IT IS HEREBY ORDERED that the Motion to Enforce (ECF No. 9) is GRANTED as follows:

1. Respondents are ORDERED to immediately release Petitioner Tatiana Miagkikh from their custody.
2. Respondents are permanently ENJOINED AND RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, which include, at a minimum, pre-deprivation notice describing the change of circumstances necessitating Petitioner's arrest and detention, and a timely hearing. At any such hearing, the Government shall bear the burden of establishing, by clear and convincing evidence, the change of circumstances that renders Petitioner a danger to the community or a greater risk of flight, and Petitioner shall be allowed to have her counsel present. This Order does not address the circumstances in which Respondents may detain Petitioner in the event Petitioner becomes subject to an executable final order of removal.
3. The Clerk of the Court is directed to serve the California City Immigration Processing Center with a copy of this Order.
4. This Order resolves all pending motions.

IT IS SO ORDERED.

Dated: **November 6, 2026**

Daniel J. Calabretta

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC7 – Miagkikh26cv03295.merits